R & R Shoe Corp., Plaintiff and Appellant, *v.* Joaquín García Rodríguez, etc., Defendants and Appellees.

No. R-66-77.      Decided December 12, 1967.

*Baragaño, Trías, Saldaña, Harris & Francis* and *Guillermo Nigaglioni* for appellant. *Rodríguez Ema & Rodríguez Ramón, Rodolfo Zequeira,* and *Nicolás Jiménez* for appellees.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Appellant requested this Court to review a summary judgment rendered against it by the Superior Court, San Juan Part. We issued the writ but after studying the case including the Judgment of the Superior Court, the extensive briefs, the documents in the record, and the applicable law and regulations, we conclude that the judgment appealed from should be affirmed.

The facts may be summarized as follows. Defendants-appellees are owners of a building located on Borinquen Avenue, in Santurce, P.R. Said building, which was constructed in the year 1918, was divided during the years prior to 1954 into two premises. The premises on the left, facing the building, occupied approximately 25% of the area of the building. At the end of 1954 and at the beginning of 1955 repairs were made in the building. The premises on the right, facing the building, which occupied approximately 75% of the building, were subdivided into six prem-

ises. Over ten years ago, on August 3, 1956, the Economic Stabilization Administration fixed the rent of the six premises on the right at $142 monthly each and the rent of the premises on the left at $140.[1]

In March 1957 the defendant obtained permit from the Bureau of Permits of the Planning Board to make substantial repairs in the left premises. After said repairs, which are mentioned hereinafter, were finished the defendant leased the premises to appellant. The lease contract was made by public deed, signed on May 3, 1957. The lessee appeared through its President, Mr. V. Rypar.

The parties agreed in the deed that the premises giving rise to this litigation consisted, since the works of 1957, of two commercial premises of 1851 square feet each one; that the monthly rent for both premises would be $500 ($250 each one); that the term of the lease would be two years, beginning June 1, 1957, the lessee corporation having the option of 4 extensions of two years each, which carried the lease until May 31, 1967, if the lessee exercised all the options for extension. Neither the lessor nor the lessee requested the Economic Stabilization Administration to readjust the rent by reason of the works carried out in the year 1957. The lessee took possession of the premises and paid the monthly rent agreed upon for approximately eight years.

In November 1962 the lessee and plaintiff-appellant herein, requested the lessor an additional extension of the lease for ten years as of May 31, 1967, date on which the contract in force would expire, as we have previously indicated. The lessor did not consent to the additional extension of ten years. On January 12, 1964, Mr. V. Rypar, President of the plaintiff corporation, died. On March 15, 1965, the plaintiff-corporation, represented now by the new President, Mr. Rypar's widow, filed a complaint in the Superior Court,

---

[1] In *Garcia* v. *Superior Court*, 82 P.R.R. 651 (1961), we affirmed said administrative action.

San Juan Part, against appellees for $33,788.33 for rent collected in excess and for $8,626.80 more for triple damages pursuant to the Reasonable Rents Act. By agreement between the parties, plaintiff vacated the premises on March 15, 1966, a year after the complaint had been filed. Plaintiff's total claim is of $46,728.53.

Defendant-appellee, Joaquín García Rodríguez, moved for summary judgment dismissing the complaint, accompanying the motion for summary judgment with a copy of a sworn statement, copy of the deed of the lease contract, and copy of the Administrative Order No. 4 promulgated on June 11, 1948, by the Rent Administrator of Puerto Rico.

In his sworn statement, the defendant stated that on August 3, 1956, the Economic Stabilization Administration of Puerto Rico had fixed a rental of $140.55 monthly for the commercial premises on which this suit is based, at 2260 Borinquen Avenue; that during the year 1957 he carried out fundamental repairs in the same, which are set forth in detail in the statement; that after the reconstruction work he leased the premises to plaintiff-appellant for a monthly rent of $500; and that between the sum invested in repairs and what existed then there is an investment of $50,000.

The improvements described by defendant in his sworn statement include, among others, an enlargement of the premises of approximately 400 square feet, reconstruction of the floor with tiles, roughening and plastering of walls, new electric installation, reforms in the roof, new ceiling, construction or reconstruction of sanitary services, new gate for the patio, new windows with iron grill work, and two new front doors. For the enlargement aforementioned a new reinforced concrete slab, floor with tiles, new walls, and glass display windows were made.

After the defendant filed the motion for summary judgment, the plaintiff filed a motion requesting that said sum-

mary judgment be denied or that the hearing be continued so as to have time to obtain evidence to controvert what was presented by the defendant. Plaintiff alleged in its motion that there existed a controversy as to the facts but that "it has been impossible to obtain opposing affidavits in order to justify adequately its opposition to the motion for summary judgment."

Plaintiff accompanied its motion with a sworn statement given by Jarmila Rypar wherein she stated that she is the President of R & R Shoe Corporation; that she read the sworn statement of Mr. Joaquín García; that the improvements allegedly carried out were prior to the date on which R & R Shoe Corporation leased the premises; that since she had not been the one who executed the lease contract, but Mr. Vladyslav Rypar, who died, it is impossible for her to determine with absolute precision the veracity of the sworn statement of Mr. Joaquín García; and that by information and belief she has good reasons to deny part of the facts.

The Superior Court ordered the continuance of the hearing and days later the plaintiff filed a Motion in Opposition to the Motion for Summary Judgment, accompanying it with two sworn statements. The first one was given by Mr. Rafael Ramírez Chévere, who occupied the premises contiguous to the premises occupied by plaintiff between the years 1955 and 1958. In essence, Ramírez Chévere states that part of the improvements allegedly carried out during the year 1957 existed prior to said year. The statement of Mrs. Rypar is only a copy of the one attached to the Motion for Continuance.

The defendant-appellee submitted as additional documents in support of his Motion for Summary Judgment the construction permit and an application for the construction certificate, dated March 18, 1957, and April 30, 1957, respectively.

After examining the evidence offered in support and in opposition to the motion for summary judgment, the trial

court concluded that there is no genuine controversy of facts between the parties on the following extremes: that the premises occupied by plaintiff existed prior to October 1942; that since the year 1956 said premises had a maximum rent fixed by the Administration of $140.22; that the premises were not leased on July 17, 1946, and that it was leased for the first time in the year 1950; that during the year 1957 a number of improvements were carried out which are detailed in the judgment; that after the improvements were carried out a lease contract was executed between the parties for a rent of $500 monthly; and that none of the parties has requested the Administration to readjust the rent agreed upon in the contract. The improvements of the year 1957 which the court found that had been carried out correspond essentially with defendant's contention.

The court concluded, as a question of law, that the defendant carried out "capital improvements distinct from acts of mere maintenance or routine repairs." The court found that the Reasonable Rents Act, Act No. 464 of April 25, 1946, 17 L.P.R.A. § 181 *et seq.*, § 4(2)(f) of the Rent Regulation for Commercial Premises of November 1, 1946, and Administrative Order No. 4 of June 11, 1948, were applicable to the facts of this case.

In the light of the provisions mentioned the court concluded that the lessor was entitled to collect the rent agreed upon by the parties until it was readjusted by the Administration. It concluded, further, that there being no controversy as to the facts, it was proper to render summary judgment dismissing the complaint and it was so rendered.

■ Appellant assigns four errors. In the first it argues that the court erred in rendering summary judgment because there existed a controversy as to the facts and because the court passed "on the credibility of the evidence." It discusses the question of the importance and cost of the reforms made to the premises. The court concluded that capital

improvements were made and not mere acts of maintenance or repairs and we believe that it was correct. It is a question of reason and further it was thus permitted by § 5 of the Rent Regulation for Commercial Premises of 1946, that capital improvements is a ground for increasing the rent. Inversely, said section provided also that substantial deterioration was a reason for decreasing the rent.[2]

■ It is true that assuming as true—as it should be assumed by the trial court, it being a question of a summary judgment—what Ramírez Chévere stated in his sworn statement and assuming also that what the defendant stated in his is true—which the court was not bound to do but could do—there are some discrepancies with respect to the reforms made to the building and with respect to the dates on which they were carried out. But this notwithstanding, considering the important repairs made in 1957 and especially the new works, the enlargement of 375 square feet, it all turns out to be a capital improvement, within the meaning given to that phrase by the Regulation in its § 5.[3] A capital improvement having been made the Superior Court did not err in concluding that there was no controversy as to the material facts when in applying the law to the facts on which there is no controversy the result would be the same although the version of the facts of the party opposing the summary judgment would be accepted as true. This is the case at bar.

The other three errors assigned by appellant concern the provisions of the Regulation, and its construction. The trial court did not err in applying Administrative Order No. 4 approved by the Administrator on June 11, 1948. By virtue of the authority granted by the Reasonable Rents

---

[2] We express ourselves in the past tense because that Rent Regulation for Commercial Premises of 1946 was substituted. The Rent Regulation of December 15, 1964, governs today. See 17 R.&R.P.R. § 186–25 et seq.

[3] "Capital improvement is that resulting in additional construction or in a complete rehabilitation." Regulation of 1946, § 5(a)(1).

Act the following was provided therein, insofar as pertinent:

"I. As of the effective date of this Order . . . the maximum rent of business premises which were not leased during the period comprised from July 17, 1946 to May 14, 1948, and have been leased after May 14, 1948, shall be, in the case of:

A. Premises the construction of which was terminated on or before October 1, 1942: . . .

(3) the first rent fixed to said premises after the last improvement or fundamental change carried out on said premises subsequent to . . . (October 1, 1942)."

■ Appellant maintains that the "rent fixed" means the rent fixed by the Administrator and not by the contracting parties. Appellant believes, and we agree, that besides Administrative Order No. 4, § 4 (b) of the Regulation of 1946 is applicable to this case. Said section provides that the maximum rent of commercial premises leased after July 17, 1946, will be "the first rent fixed to said premises if they are leased for the first time after July 17, 1946."

We do not agree with appellant's allegation in the sense that "rent fixed" refers always to the rent fixed by the Administrator. It should be noted that § 4 (e) of the Regulation itself upon referring to "all the cases comprised in § 4 (b)" provides that if "the Administrator fixes a maximum rent lower than the one *fixed by the landlord* the reduction will have prospective character." (Italics ours.)

Section 4 (b) of the Regulation of 1946 was applicable to this case insofar as it would not conflict with Administrative Order No. 4 of 1948. Said Order expressly provides in its § IV the following:

"IV. All the provisions of the Rent Regulation For Commercial Premises not in conflict with the provisions of this Order are applicable to business premises herein regulated."

An examination of § 4 of the Regulation in connection with Administrative Order No. 4 makes us think that probably the purpose of including § I (A) (3) in the Order was

to place on the same footing the premises constructed before 1942 which were rented for the first time after July 17, 1946, and the premises rented on or before said date, for the purpose of establishing as lawful rent, until the Administrator would modify it, the rent fixed by the lessor after a capital improvement.

■ Once the capital improvements were made the lessor and the lessee had the power to readjust the rent, that is, to fix it by mutual agreement. If any of the two parties disagreed then it could resort to the Economic Stabilization Administration so that the latter would fix it. See *Aparicio v. Peñagaricano*, 84 P.R.R. 386 (1962).

The judgment rendered in this case by the Superior Court, San Juan Part, on March 8, 1966, will be affirmed.